| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>EASTERN DISTRICT OF NEW YORK<br>------------------------------------------------------------------------- X<br>CHARLES GRIFFIN, GERALDINE GRIFFIN, CRAIG GRIFFIN, LANCE GRIFFIN, and CARIL SIMMONS<br>              Plaintiffs,<br>   -against-<br><br>INCORPORATED VILLAGE OF ROCKVILLE CENTRE, FRANCIS X. MURRAY, Mayor of the Incorporated Village of Rockville Centre, in his official and individual capacities, DANIEL CASELLA, Building Superintendent for the Incorporated Village of Rockville Centre, in his official and individual capacities, JOHN GOOCH, Building Inspector for the Incorporated Village of Rockville Centre, in his official and individual capacities, THOMAS BUNTING, Building Inspector for the Incorporated Village of Rockville Centre, in his official and individual capacities, JOHN THORP, Fire Chief for the Incorporated Village of Rockville Centre, in his official and individual capacities, PETER KLUGEWICZ, Chief Fire Safety Inspector for the Incorporated Village of Rockville Centre, in his official and individual capacities, and JOHN and/or JANE DOES,<br><br>              Defendants.<br>------------------------------------------------------------------------- X | For Online Publication Only<br><br><br><br>**MEMORANDUM &**<br>**ORDER**<br>14–CV–4491 (JMA)(AYS) |

**AZRACK, United States District Judge:**

On July 25, 2014, plaintiffs Charles Griffin, Geraldine Griffin, Craig Griffin, Lance Griffin, and Caril Simmons filed this action against defendants the Incorporated Village of Rockville Centre, Francis X. Murray, Daniel Casella, John Gooch, Thomas Bunting, John Thorp, and Peter Klugewicz, alleging claims under Section 1983 for violation of plaintiffs' constitutional rights. Defendants now move to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. For the reasons stated below, defendants' motion to dismiss is granted in part and denied in part.

1

# I. BACKGROUND

On October 28, 2015, defendants filed a motion to dismiss the complaint for failure to state a claim. (ECF No. 39.) In response, on the same day, plaintiffs filed a motion to amend the complaint. (ECF No. 41.) Before the Court rules on the motion to dismiss, it must first address plaintiffs' cross motion for leave to amend the complaint.

## A. Plaintiffs' Motion to Amend

Federal Rule of Civil Procedure 15 governs amendments to pleadings. Fed. R. Civ. P. 15. Rule 15 provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Notwithstanding liberal amendment standards, the decision to grant or deny a party's motion for leave to amend "is within the sound discretion of the district court." Zahra v. Town of Southold, 48 F.3d 674, 685 (2d Cir. 1995). A court may deny leave to amend in circumstances of "undue delay, bad faith, futility of the amendment, [or] . . . prejudice." Aetna Cas. & Sur. Co. v. Aniero Concrete Co., Inc., 404 F.3d 566, 603–04 (2d Cir. 2005). A proposed amendment is futile where the claims would not survive a motion to dismiss. Dougherty v. Town of North Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 88 (2d Cir. 2002).

Though defendants oppose plaintiffs' motion to amend, (see ECF No. 42), the Court does not believe, based on the record in front of the Court, that granting plaintiffs' motion would prejudice defendants, unduly delay the proceedings, or countenance any bad faith. Accordingly, plaintiffs' motion to amend is granted to the extent that the proposed amendments are not futile.

Plaintiffs filed their motion to amend the complaint while defendants' motion to dismiss was pending. The Court, therefore, has "a variety of ways in which it may deal with the pending motion to dismiss." Schwartzco Enters. LLC v. TMH Mgmt., LLC, 60 F. Supp. 3d 331, 338

(E.D.N.Y. 2014) (internal quotation marks and citation omitted). Because the proposed Second Amended Complaint has not added any additional parties,[1] and because defendants have had an opportunity to respond to the proposed Second Amended Complaint, the Court will consider the merits of defendants' motion in light of the allegations in the proposed Second Amended Complaint. "Indeed, if the proposed amended complaint cannot survive the motion to dismiss, then plaintiffs' cross-motion to amend will be denied as futile." Haag v. MVP Health Care, 866 F. Supp. 2d 137, 140 (N.D.N.Y. 2012).

The Court therefore grants plaintiffs' motion to amend the complaint and evaluates defendants motion to dismiss based on the Second Amended Complaint (hereinafter, the "complaint").

**B. Facts as Alleged in the Proposed Second Amended Complaint**

Plaintiffs Charles Griffin and Geraldine Griffin resided at 257 North Village Avenue (the "Property") in Rockville Centre, New York during the relevant time period. (Compl. ¶ 19.) Plaintiff Craig Griffin, an adult child of Charles and Geraldine Griffin, currently has a life estate ownership interest in the Property. (Id. ¶ 11.) Plaintiffs Caril Simmons and Lance Griffin, also adult children of Charles and Geraldine Griffin, have no ownership interest in the Property, but maintain a bedroom and personal effects at the Property. (Id. ¶¶ 22–23.)

Defendant Incorporated Village of Rockville Centre ("Rockville Centre") is a municipal entity incorporated under New York law. (Id. ¶ 25.) Defendant Francis X. Murray is the Mayor of Rockville Centre. (Id. ¶ 26.) Defendant Daniel Casella is the Building Department Superintendent of Rockville Centre. (Id. ¶ 27.) Defendants John Gooch and Thomas Bunting are Building Inspectors for Rockville Centre. (Id. ¶¶ 28–29.) Defendant John Thopr is the Fire

---

[1] The Second Amended Complaint brings claims on behalf of Geraldine Griffin, who is deceased, through Caril G. Simmons, as administrator of her estate.

Chief of Rockville Centre. (Id. ¶ 31.) Defendant Peter Klugewicz is the Chief Fire Safety Inspector for Rockville Centre. (Id. ¶ 32.)

Plaintiffs collectively have resided at the Property for over fifty years. (Id. ¶ 35.) Several years ago, a dispute arose with a neighbor, James Murphy, a non-party to this litigation. (Id. ¶ 39.) Since that time, Murphy filed multiple complaints with the Rockville Centre Building Department regarding property maintenance. (Id. ¶ 41.)

On February 23, 2012, defendant Gooch, the Rockville Centre Code Enforcement Officer, sent a letter to the Griffin home listing code violations, including "[u]nsheltered storage of un-useable automobiles, garbage and debris." (Id. ¶ 42.) In response to this letter, Caril Simmons called Gooch to request details regarding the complaint, and was told that "[i]t has been taken care of . . ." (Id. ¶ 43.)

In July 2012, Caril Simmons received a letter from Casella further stating code and maintenance violations. (Id. ¶ 47.) The letter stated that on July 17, 2012, the Building Department conducted an inspection of the Property. (Id. ¶ 48.) The complaint alleges that Gooch and Casella were present on the premises during the inspection. (Id. ¶ 50.)

Subsequently in August 2012, defendants came to the property and sent follow up letters to plaintiffs regarding the condition of the property and potential code violations. (Id. ¶¶ 53, 55–57.) On August 20, 2012, the Building Department summoned the Fire Department and police officers to inspect the Property and enter the premises, without obtaining consent from any member of the Griffin family. (Id. ¶ 58.) A sign was posted on the Property's front door, signed by Gooch, which indicated that there was a code violation. (Id. ¶ 59.) A second floor window was also slightly ajar. (Id. ¶ 60.) The complaint does not allege that the Griffins were home during this search.

4

Between August 2012 and December 2012, the Griffins had several interactions with various Rockville Centre representatives. Architects for the Griffins reported that the Building Department failed respond to requests for original site plans for the house. (Id. ¶ 62.) The Griffins, and in particular Caril Simmons, engaged in conversations with Gooch and Casella regarding obtaining a Buildings Department permit. Ultimately, on October 22, 2012, Caril Simmons received an Appearance Ticket signed by Gooch directing her to appear before the Village Court for "failure to obey directive." (Id. ¶ 70.)

On May 1, 2013, Bunting "broke into the Griffins' property." (Id. ¶ 79.) Klugewicz later acknowledged that he also entered the Property. (Id.) Casella also acknowledged being in the yard of the Property. (Id.) Thorp acknowledge that he entered the house on the Property. (Id.) The complaint further alleges that a "mob of people then entered and broke the locked front driveway gate, broke into the property's locked detached garage, and entered the Plaintiff's locked shed by breaking and cutting off locks . . . ." (Id. ¶ 81.) The complaint does not allege that the Griffins were home during this search.

Additionally, the complaint alleges that "[t]he trespassers took valuable private property, including but not limited to, a hood ornament from a 1952 MG car worth over five hundred ($500) dollars. They also broke a replacement glass window, destroyed a fence and cut numerous expensive padlocks." (Id. ¶ 84.)

Pursuant to Section 1983, plaintiffs bring Fourth Amendment claims for unreasonable search and seizure, Equal Protection claims based on selective enforcement, procedural Due Process claims based on deprivation of property, and substantive Due Process claims based on defendants' alleged use of the judicial system to carry out a personal feud. Plaintiffs also bring claims under New York law for trespass and vandalism and theft of property.

## II. DISCUSSION

### A. Standard on Motion to Dismiss

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. See Cleveland v. Caplaw Enters., 448 F.3d 518, 521 (2d Cir. 2006); Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, plaintiff must allege sufficient facts "to state a claim for relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim is facially plausible only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556). Mere labels and legal conclusions will not suffice. Twombly, 550 U.S. at 555. The plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant acted unlawfully." Iqbal, 556 U.S. at 678.

### B. Standing

Defendants argue that plaintiffs lack standing to assert multiple claims because the complaint fails to sufficiently allege injury to the plaintiffs and a sufficient nexus between actions of each defendant and the injury alleged.

Standing requires the existence of a "case or controversy." To establish this constitutional requirement, plaintiff must show that he or she personally has suffered an injury that is "concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." Clapper v. Amnesty Int'l, 133 S. Ct. 1138, 1141 (2013). The Court addresses defendants' arguments regarding standing below, as they relate to each of plaintiffs' claims.

**C. Standard for <u>Section 1983 Claims</u>**

Section 1983 provides a cause of action against any:

person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws.

42 U.S.C. § 1983. "To properly plead a claim under the statute, a 'plaintiff must allege that some person has deprived him of a federal right' and 'that the person who has deprived him of that right acted under color of state or territorial law.'" <u>Nesbitt v. Cnty. of Nassau</u>, No. 05–CV–5513, 2006 WL 3511377, at *2 (E.D.N.Y. Dec. 6, 2006) (quoting <u>Gomez v. Toledo</u>, 446 U.S. 635, 640 (1980)).

1. <u>Municipal Liability</u>

To establish a municipal liability claim, "a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." <u>Torraco v. Port Auth. of N.Y. & N.J.</u>, 615 F.3d 129, 140 (2d Cir. 2010). A plaintiff can establish an official policy or custom by showing any of the following: (1) a formal policy officially endorsed by the municipality; (2) actions or decisions made by municipal officials with decision-making authority; (3) a practice so persistent and widespread that it constitutes a custom of which policymakers must have been aware; or (4) a failure by policymakers to properly train or supervise their subordinates, such that the policymakers exercised "deliberate indifference" to the rights of the plaintiff and others encountering those subordinates. See <u>Iacovangelo v. Corr. Med. Care, Inc.</u>, 624 Fed. App'x. 10, 13–14 (2d Cir. 2015) (formal policy officially endorsed by the municipality); <u>Matusick v. Erie Cty. Water Auth.</u>, 757 F.3d 31, 62 (2d Cir. 2014) (widespread and persistent practice); <u>Carter v. Inc. Vill. of Ocean Beach</u>, 759 F.3d 159, 164 (2d Cir. 2014) (failure to train amounting to

7

deliberate indifference); Jones v. Town of E. Haven, 691 F.3d 72, 81 (2d Cir. 2012) (policymaking official's "express" or "tacit" ratification of low-level employee's actions).

"Although there is no heightened pleading requirement for complaints alleging municipal liability under § 1983, a complaint does not 'suffice if it tenders naked assertion[s] devoid of further factual enhancement.'" Green v. City of Mount Vernon, 96 F. Supp. 3d 263, 301–02 (S.D.N.Y. 2015) (internal citations omitted) (citing Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 168 (1993) and Iqbal, 556 U.S. at 678. To survive a motion to dismiss a municipal liability claim, "a plaintiff must allege facts tending to support, at least circumstantially, an inference that . . . a municipal policy or custom exists." Santos v. New York City, 847 F. Supp. 2d 573, 576 (S.D.N.Y. 2012) (citing Dwares v. City of New York, 985 F.2d 94, 100 (2d Cir. 1993)).

    2. Individual Liability

"In order to establish individual liability under § 1983, a plaintiff must show (a) that the defendant is a 'person' acting 'under the color of state law,' and (b) that the defendant caused the plaintiff to be deprived of a federal right." Back v. Hastings On Hudson Union Free Sch. Dist., 365 F.3d 107, 122 (2d Cir. 2004). "Additionally, '[i]n this Circuit personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" Id. (quoting McKinnon v. Patterson, 568 F.2d 930, 934 (2d Cir. 1977)).

"Personal involvement" for purposes of Section 1983 may be shown by evidence that the "the defendant participated directly in the alleged constitutional violation"; "the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong"; "the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom"; or "the defendant was grossly negligent in

8

supervising subordinates who committed the wrongful acts." Grullon v. City of New Haven, 720 F.3d 133, 139 (2d Cir. 2013). For example, "[w]hen an allegedly discriminatory action is taken by an entity . . . , a participant in the decision making process may be held liable for that action if the plaintiff can demonstrate that the individual defendant acted with a[n] improper motive and played a 'meaningful role' in the decision making process[.]" Span v. Enlarged City Sch. Dist. of Troy, No. 12-CV-0975, 2012 WL 3886177, at *2 (N.D.N.Y. Sept. 6, 2012).

### D. Unreasonable Search and Seizure Claims

Plaintiffs argue that defendants violated their Fourth Amendment right to be free from unreasonable search and seizure when defendants entered plaintiffs' property on three separate occasions. Defendants argue that plaintiffs Caril Simmons, Lance Griffin, and Geraldine Griffin lack standing to prosecute this claim because they have no ownership interest in the Property. Defendants also argue that plaintiffs failed to allege that certain individual defendants were personally involved in the search of the property.

It is well settled that government actors are not exempt from the warrant requirement merely because they are looking for violations of a fire or housing code instead of the fruits or instrumentalities of a crime. Ferreira v. Town of E. Hampton, 56 F. Supp. 3d 211, 229 (E.D.N.Y. 2014).

    1. Standing

Defendants argue that plaintiffs Caril Simmons, Lance Griffin, and Geraldine Griffin lack standing to prosecute this claim because they lack a property interest, and thus have failed to sufficiently allege an injury in fact. The Court agrees that Caril and Lance Simmons lack standing and that their Fourth Amendment claims must be dismissed. However, for Geraldine

9

Griffin, there are sufficient facts to plausibly state that she suffered injury in fact as a result of an unconstitutional search.

Under the Fourth Amendment, "a 'search' occurs when an expectation of privacy that society is prepared to consider reasonable is infringed." United States v. Jacobsen, 466 U.S. 109, 113 (1984). A person can have a legally sufficient interest in a place that is not necessarily owned by that person. Rakas v. Illinois, 439 U.S. 128, 141−42 (1978). "The Fourth Amendment protects people, not places." Katz v. United States, 389 U.S. 347, 351 (1967). When invoking the protection of the Fourth Amendment a party must be able to demonstrate that he had a legitimate subjective expectation of privacy in the place searched. Minnesota v. Carter, 525 U.S. 83, 88 (1998).

With respect to Geraldine Griffin, the complaint alleges that the Property was her primary residence. (See Compl. ¶ 23.) As a primary resident of the property, Geraldine Griffin has alleged that she had a legitimate, subjective expectation of privacy in the Property. This is sufficient to plead injury in fact as a result of the alleged unconstitutional search. The fact that she was merely a permanent resident of the Property as opposed to an owner of the Property does not negate her legitimate expectation of privacy. See Carter, 525 U.S. at 88.

However, the complaint does not plausibly allege that Caril Simmons or Lance Griffin had a legitimate, subjective expectation of privacy in the Property to support standing for a Fourth Amendment claim. The complaint alleges that Caril Simmons maintained a residence separate from the Property, but that she "maintained a bedroom on the property and spent days and evenings there." (Compl. ¶ 23.) The complaint alleges that Lance Griffin maintained a room and personal property at his parents' home, but does not allege that he resided at the property. (Id. ¶ 22.)

10

Plaintiffs cite to Minnesota v. Olson, 495 U.S. 91 (1990), to support their argument that the non-property owning children also experienced a violation of their Fourth Amendment rights. However, that case is inapposite. In Olson, the Supreme Court recognized that an overnight guest in a home can have a reasonable expectation of privacy in his overnight quarters. 495 U.S. at 98. The Supreme Court held that a warrantless search of the home where the guest was staying was a violation of the Fourth Amendment. Id. The Court rejected the argument that an individual claiming unreasonable search is only protected if he can prove the place searched was his home. Id.

Here, the complaint does not allege that Caril Simmons or Lance Griffin were residents of the Property or present on the Property at the time of the alleged searches. Nor does the complaint allege that any of the damaged or vandalized property belonged to either Caril Simmons or Lance Griffin. In short, the complaint lacks any plausible allegations that Caril Simmons or Lance Griffin had a legitimate, subjective expectation of privacy in the Property at the time of the alleged searches. Therefore, Caril Simmons and Lance Griffin lack standing to bring a claim for an unconstitutional search claim against defendants. The Fourth Amendment claims of these plaintiffs are dismissed.

2. Municipal Liability

Defendants argue the Section 1983 claims against Rockville Centre must be dismissed because plaintiffs have failed to plausibly allege that defendants' conduct was pursuant to a municipal policy or custom to sustain liability under Monell. Plaintiffs argue that the complaint establishes that the municipality violated a custom or policy because Rockville Centre personnel "failed to prevent the wrongs perpetrated against Plaintiff pursuant to [Rockville Centre's] custom and policy which amounted to deliberate indifference to Plaintiff's rights." (Pls.' Opp.

Br. at 11.) Because plaintiffs have failed to plausibly state a claim for Monell liability, the Fourth Amendment claims against Rockville Centre are dismissed.

First, plaintiffs allege that Rockville Centre personnel "failed to prevent the wrongs perpetrated" against plaintiffs because Rockville Centre took part in an unlawful inspection of the Property in September 2014, pursuant to an order by the Village Justice. (See Compl. ¶ 108.) The complaint is silent as to what occurred during the alleged unlawful inspection in September 2014. The complaint does not allege which Rockville Centre personnel, if any, actually entered and searched the Property. Nor does the complaint allege how the defendants were "grossly negligent in their supervision of their subordinates" in conducting or witnessing the search. (Id.) In fact, the complaint is devoid of any allegations relating to the September 2014 inspection other than the bald assertions in paragraph 108. Therefore, these allegations are insufficient to state a claim for Monell liability.

Moreover, a general review of the complaint's allegations fails to reveal any other allegations about municipal activity that would support a claim for municipal liability. Plaintiffs failed to allege any facts to support (1) the conclusory assertion that Rockville Centre had a custom or policy amounting to deliberate indifference and (2) the conclusory allegation that specific personnel failed to act when they should have.

In short, plaintiffs' have failed to allege an official policy or custom of Rockville Centre that resulted in their deprivation of rights. The complaint does not sufficiently allege a failure by policymakers to properly train or supervise their subordinates. Therefore, plaintiffs' Section 1983 claims against Rockville Centre are dismissed.

3. <u>Personal Involvement of Individual Defendants</u>

As explained above, to sustain a Section 1983 claim against defendants in their individual capacities, plaintiffs must allege personal involvement of each individual defendant. The Court addresses liability as to each of the individual defendants for each of the three alleged unlawful entries on the Property.

    a. *The Entry on July 17, 2012*

The complaint alleges that only Gooch and Casella were present on the premises during the inspection. (<u>Id.</u> ¶ 50.) There are no allegations about this inspection with relation to the other individual defendants. Therefore, the unlawful search and seizure claims stemming from the July 17 search of the Property are dismissed as to defendants Murray, Bunting, Thorp, and Klugewicz.

    b. *The Entry on August 20, 2012*

The complaint contains no allegations as to which of the individual defendants entered the Property on August 20. Plaintiffs' allegations that the Building Department "summoned" the Fire Department and police officers to inspect the Property is not sufficient to allege the personal involvement of any of the individual defendants. Therefore, the unlawful search and seizure claims stemming from the August 20 search of the Property are dismissed as to all defendants.

    c. *The Entry on May 1, 2013*

The complaint alleges that Bunting, Klugewicz, Casella, and Thorp entered the Property on May 1. Therefore, the unlawful search and seizure claims stemming from the May 1 search of the Property are dismissed as to defendants Murray and Gooch.

    4.   Destruction of Property

It is unclear whether plaintiffs also allege a claim for destruction of property under the Fourth Amendment. To the extent that plaintiffs do raise such a claim, however, that claim also fails. The Fourth Amendment prohibits the "[e]xcessive or unnecessary destruction of property in the course of a search . . . ." Smith v. City of New York, No. 04-CV-3286, 2010 WL 3397683, at *13 (S.D.N.Y. Aug. 27, 2010). However, as with all claims arising under Section 1983, a defendant must be personally involved to be liable for a violation of the Fourth Amendment's unlawful seizure provision. See Crandall v. David, 457 Fed. App'x. 56, 58 (2d Cir. 2012) (affirming summary judgment where the defendant had no personal involvement in an unlawful seizure). Here, the complaint does not allege which defendants were responsible for the vandalism and destruction of property. (See Compl. ¶¶ 81–84.) Therefore, this claim fails.

### E. Due Process Claims for Deprivation of Property

To the extent that plaintiffs assert a Fourteenth Amendment claim for deprivation of property without just compensation, such claims are not properly brought in federal court pursuant to Section 1983. Federal courts do not provide redress for the deprivation of property if there is an adequate state court remedy available to a plaintiff. Hudson v. Palmer, 468 U.S. 517, 533 (1984). In New York, courts afford such a remedy through the initiation of an Article 78 proceeding. See N.Y. C.P.L.R. §§ 7803, 7804; see also Locurto v. Safir, 264 F.3d 154, 174 (2d Cir. 2001) ("An Article 78 proceeding permits a petitioner to submit affidavits and other written evidence, and where a material issue of fact is raised, have a trial of the disputed issue, including constitutional claims.") (citations omitted).

Here, plaintiffs contend that defendants "seized a hood ornament . . . , broke a window, and cut numerous padlocks, all of which constitute a deprivation of property without just

14

compensation." (Compl. ¶ 110.) In this case, however, plaintiffs may properly seek redress in an Article 78 proceeding, rather than pursue a claim under Section 1983. Therefore, to the extent that plaintiffs asserted a Fourteenth Amendment claim for deprivation of property without just compensation, that claim is dismissed.

**F. Selective Enforcement Equal Protection Claims**

Plaintiffs assert a claim under the Equal Protection Clause of the Fourteenth Amendment. Plaintiffs allege that defendants "engaged in selective enforcement of their own laws, rules, regulations, and ordinances." (Compl. ¶ 120.) Defendants argue that plaintiffs' Equal Protection claims under Section 1983 fails because there are insufficient allegations that plaintiffs were treated differently from similarly situated individuals. The Court agrees.

"The Equal Protection Clause of the Fourteenth Amendment requires the government to treat similarly situated persons alike." Missere v. Gross, 826 F. Supp. 2d 542, 560 (S.D.N.Y. 2011). In a case such as this, where plaintiffs do not claim to be members of a protected class, plaintiff may still bring an Equal Protection claim under either the selective enforcement or "class of one" theories. Id. In this case, plaintiffs base their Equal Protection claims on the selective enforcement theory.

To state a selective-enforcement claim, a plaintiff must plead: (1) he was "treated differently from other similarly situated" individuals; and (2) "that such differential treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." Cine SK8, Inc. v. Town of Henrietta, 507 F.3d 778, 790 (2d Cir. 2007).

Plaintiffs' Equal Protection claims based on selective enforcement fail because plaintiffs have not sufficiently alleged that they were treated differently from similarly situated

15

individuals.  Although plaintiffs assert that defendants "engaged in selective enforcement of their own laws, rules, regulations, and ordinances," plaintiffs' have not alleged sufficient facts showing that neighbors or other citizens were similarly situated.

The complaint alleges that the Griffins "were forced to remove a beloved classic custom green Mark IV to an area further behind their property line when their neighbor, James Murphy, . . . had a non-functioning car in the same position in his driveway.  (Compl. ¶ 106.)  The complaint also alleges that the Build Department did not send summonses to other residents for violations relating to the height of a fence, when "dozens of property owners in the surrounding property" had fences with similar heights.  (Id. ¶ 107.)

At the outset, plaintiffs' selective enforcement claim fails because the complaint does not identify which individual defendants were personally involved in the selective enforcement of codes or regulations against plaintiffs.  With respect to the non-functioning car, the complaint does not allege by whom the Griffins were forced to move the car or pursuant to what code or regulation violation.  With respect to plaintiffs' fence, the complaint simply alleges that the "Building Department did not send out similar summonses" to other similarly situated property owners.  The complaint does not allege personal involvement on the part of any individual defendant.  For this reason alone, plaintiffs Section 1983 claim for selective enforcement fails.

Moreover, these allegations do not sufficiently identify similarly situated comparators.  When discussing the similarly situated comparators, the complaint provides no information about their properties, situations, or conduct that would support the conclusory statement that they were similarly situated.  See MacPherson v. Town of Southampton, 738 F. Supp. 2d 353, 371 (E.D.N.Y. 2010).  These allegations are insufficient to state a claim.

Additionally, the complaint contains no plausible allegations that any alleged differential treatment was based on impermissible considerations. The complaint merely contains conclusory allegations that the "conduct was intentional, conducted with bad faith, wholly irrational and arbitrary, and to the detriment of the Plaintiffs." (Compl. ¶ 120.) These allegations are insufficient to show that any differential treatment was based on an impermissible consideration. As a result, plaintiffs' equal protection claims are dismissed.

### G. Substantive Due Process Claims

Plaintiffs allege that defendants violated their Due Process rights by "continuously retaliating against, and harassing Plaintiffs." (Compl. ¶ 125.) In particular, plaintiffs claim that defendants used the judicial system to carry out a personal feud. In support of this theory, plaintiffs allege that Rockville Centre's presiding judge, a non-party to this litigation, visited Murphy's home on numerous occasions and that Murphy engaged in ex parte communications with Rockville Centre's prosecuting attorney. (Id. ¶¶ 126–27.) Plaintiffs' due process claims fail.

To assert a substantive due process claim, plaintiff must plead: (1) "a constitutionally cognizable property interest is at stake," and (2) defendants' "alleged [actions] were arbitrary, conscious-shocking, or oppressive in the constitutional sense, not simply incorrect or ill advised." Ferran v. Town of Nassau, 471 F.3d 363, 369–71 (2d Cir. 2006). "For state action to be taken in violation of the requirements of substantive due process, the denial must have occurred under circumstances warranting the labels 'arbitrary' and 'outrageous.'" Natale v. Town of Ridgefield, 170 F.3d 258, 262 (2d Cir. 1999). A plaintiff must plead governmental conduct that "is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." Velez v. Levy, 401 F.3d 75, 93 (2d Cir. 2005).

Plaintiffs' allegations are insufficient to state a substantive due process claim. As an initial matter, it is unclear what property interest forms the basis of plaintiffs' claims. Furthermore, the complaint fails to allege that any denial of a property interest is connected to these allegations or that the denial of rights occurred under circumstances connected to these allegations.

However, even assuming that plaintiffs have pleaded a property interest, they fail to state a substantive due process claim because the complaint does not sufficiently allege that defendants engaged in conduct that is "so egregious" and "so outrageous" as to shock the conscience. Id. Allegations that the town presiding judge visited Murphy at his home and that the town prosecuting attorney had ex parte conversations with Murphy do not reach the level of shocking the conscious. The complaint does not allege that the ex parte conversations were in any way connected to the allegations underlying this litigation. Moreover, neither Murphy, the town presiding judge, nor the town prosecuting attorney are parties to this litigation. The Court therefore dismisses plaintiffs' substantive due process claim.

**H. Trespass Claim**

Plaintiffs allege that on three separate occasions, defendants trespassed on the Property causing "serious damages." (Compl. ¶ 135.)

A claim for trespass to real property requires "an intentional entry onto the land of another without justification or permission." Marone v. Kally, 971 N.Y.S.2d 324, 327 (App. Div. 2d Dep't 2013); see also Diego Beekman Mut. Hous. Ass'n Hous. Dev. Fund Corp. Hdfc v. Dish Network, L.L.C, No. 15-CV-1094, 2016 WL 1060328, at *3 (S.D.N.Y. Mar. 15, 2016). The entry must "involve[] an invasion of a person's interest in the exclusive possession of land." Copart Indus., Inc. v. Consol. Edison Co. of N.Y., 41 N.Y.2d 564, 570 (1977).

18

For the reasons explained above, in the context of plaintiffs' unlawful search and seizure claims, the Court dismisses plaintiffs' trespass claims as to those defendants who are not alleged to have entered the Property. Therefore plaintiffs' trespass claims survive for the July 17 entry against Gooch and Casella and for the May 1 entry against Bunting, Klugewicz, Casella, and Thorp. Plaintiffs' trespass claims are dismissed as to the remaining defendants.

## I. Vandalism and Theft of Property Claim

Plaintiffs allege that "[t]he trespassers took valuable private property, including but not limited to, a hood ornament from a 1952 MG car worth over five hundred ($500) dollars. They also broke a replacement glass window, destroyed a fence and cut numerous expensive padlocks." (Compl. ¶ 84.) The Court construes this to be a claim for conversion under New York law.

"The basic essence of conversion is civil theft, capable of resulting in a transfer of the stolen property to a third party, and, thus, giving rise to a compensatory remedy for its value, if not retrievable for the owner." Shmueli v. Corcoran Grp., 802 N.Y.S.2d 871, 879 (N.Y. Sup. Ct. 2005). To prevail on a conversion claim, "a plaintiff must show (1) a possessory right or interest in the property and (2) defendant's dominion over the property or interference with it, in derogation of plaintiff's rights." Anghel v. New York State Dep't of Health, 947 F. Supp. 2d 284, 303 (E.D.N.Y. 2013).

As an initial matter, the complaint fails to specify which plaintiff owned the property underlying the vandalism and theft of property claim. Moreover, however, the complaint does not allege which defendants, if any, were personally involved in the vandalism or destruction of property. Thus, plaintiffs have failed to allege any defendant's "dominion over the property or

19

interference with it." See Anghel, 947 F. Supp. 2d at 303. As a result, plaintiffs' conversation claim is dismissed.

### III. CONCLUSION

For these reasons, defendants' motion to dismiss is granted in part and denied in part. Plaintiffs Charles Griffin, Geraldine Griffin, and Craig Griffin Section 1983 unlawful search and seizure claims and trespass claims survive for the July 17 entry against Gooch and Casella and for the May 1 entry against Bunting, Klugewicz, Casella, and Thorp. Plaintiffs' remaining claims are dismissed as to all defendants.

**SO ORDERED.**

Dated: September 30, 2016
Central Islip, New York                             /s/ (JMA)
                                                    JOAN M. AZRACK
                                                    UNITED STATES DISTRICT JUDGE