```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
CARIL SIMMONS, as administratrix of the estates
of CHARLES GRIFFIN and GERALDINE
GRIFFIN, deceased, and CRAIG
GRIFFIN,

                        Plaintiffs,            REPORT AND
                                                RECOMMENDATION
           -against-                            CV 14-4491 (GRB)(AYS)

DANIEL CASELLA, Building Superintendent
of the Incorporated Village of Rockville Centre,
JOHN GOOCH, Building Inspector for the
Incorporated Village of Rockville Centre,
THOMAS BUNTING, Building Inspector for the
Incorporated Village of Rockville Centre,
PETER KLUGEWICZ, Chief Fire Safety Inspector
for the Incorporated Village of Rockville Centre,
JOHN THORP, Fire Chief for the Incorporated
Village of Rockville Centre,

                        Defendants.
-------------------------------------------------------------X
```

**SHIELDS, Magistrate Judge:**

In 2014, plaintiffs Charles Griffin ("Mr. Griffin"), Geraldine Griffin ("Mrs. Griffin"), Craig Griffin ("Craig"), Lance Griffin ("Lance"), and Caril Simmons ("Simmons") (collectively "the Griffins" or "Plaintiffs"), filed this action against defendants the Incorporated Village of Rockville Centre ("Rockville Centre"), Francis X. Murray ("Murray"), Daniel Casella ("Casella"), John Gooch ("Gooch"), Thomas Bunting ("Bunting"), John Thorp ("Thorp"), and Peter Klugewicz ("Klugewicz") (collectively "Defendants"), alleging claims under 42 U.S.C. Section 1983 and New York State law for alleged violations of Plaintiffs' rights when Defendants took part in entering Plaintiffs' property on two separate occasions over seven years ago. See generally Complaint ("Compl."), Docket Entry ("DE") [1].

In the seven years since this action was commenced, through much motion practice, the litigants and claims have been tailored.

First, on September 30, 2016, the Honorable Joan M. Azrack, held that plaintiffs Charles Griffin, Geraldine Griffin, and Craig Griffin's Section 1983 unlawful search and seizure claims and New York State trespass claims survived a motion to dismiss Plaintiffs' Second Amended Complaint with respect to the July 17, 2012 incident against defendants Gooch and Casella and the May 1, 2013 incident against defendant Bunting, Klugewicz, Casella and Thorp, and Plaintiffs' remaining claims were dismissed as to all defendants. See DE [54] at 20. Judge Azrack then reconsidered her prior order, and further dismissed the New York State trespass claims arising from the July 17, 2012 incident. DE [63].

Next, when this action was brought, Plaintiffs were represented by counsel. In 2018, this Court permitted Plaintiffs' counsel to withdraw, and in March of 2019, Plaintiffs elected to proceed pro se.

Finally, on March 3, 2020, the District Court granted Caril Simmons' motion to substitute herself as a named party as administratrix of the estates of Charles Griffin and Geraldine Griffin, who are both deceased. See DE [133]. Hereinafter, "Remaining Plaintiffs" shall mean Caril Simmons as administratrix of the estates of Charles Griffin and Geraldine Griffin, deceased, and Craig Griffin. "Remaining Defendants" shall mean defendants Gooch, Casella, Bunting. Klugewicz, and Thorp. Remaining Plaintiffs are presently filing pro se.

Presently before this court, on referral from the Honorable Gary R. Brown for report and recommendation, is the Remaining Defendants' motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure dismissing the Remaining Plaintiffs' claims in their entirety with prejudice. DE [143].

For the reasons set forth below it is respectfully recommended that the Remaining Defendants' motion be granted in part and denied in part.

## FACTUAL BACKGROUND

I.  Basis of Facts Recited Herein

The allegations and procedural history of this case have been described in prior Memorandum and Orders. See DE [54]. [63], [127], [133]. The Court therefore assumes familiarity with the dispute and will provide factual and procedural background only as relevant to the instant motion.

The facts set forth below are drawn largely from the parties' statements of material facts submitted pursuant to Rule 56.1 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York (the "Rule 56.1 Statements"), Plaintiffs' Second Amended Complaint, and the admissible evidence submitted by the parties. The facts are undisputed unless otherwise noted.

The Court turns to discuss the facts relied upon by the parties in connection with the present motion.

II. Factual Allegations

A.  The Parties

Mr. and Mrs. Griffin resided at 257 North Village Avenue (the "Property") in Rockville Centre, New York during the relevant time period. Plaintiff Craig Griffin, an adult child of Mr. and Mrs. Griffin, has a life estate ownership interest in the property. Sec. Am. Compl. ¶ 11, DE [40-4].

Defendant Daniel Casella was the Building Department Superintendent of Rockville Centre for the relevant time period. Defendants John Gooch and Thomas Bunting are Building

Inspectors for Rockville Centre. Defendant John Thorp served as Fire Chief of Rockville Centre during the relevant time period. Defendant Peter Klugewicz is the Chief Fire Safety Inspector for Rockville Centre.

B.  Events Prior to July 17, 2012

On February 23, 2012, Defendant Gooch issued a Notice of Violation ("2/23/2012 Notice") from the Rockville Centre Code Enforcement Office for the Property citing violations including unsheltered storage of unusable vehicles and an accumulation of garbage and debris. See DE [147-18].

C.  July 17, 2012 Inspection

On July 17, 2012, defendants Gooch and Casella went to the property to perform an inspection. On that date, defendant Gooch observed structural concerns of imminent danger including structural deficiency that was noted on the front porch. Remaining Defendants contend that Gooch and Casella did not enter the property to perform the inspection; rather they observed only that which is viewable from the street. Specifically, they took the mailman's path in viewing the property. See DE [147-13] at 134[1]; see also DE [147-14] at 186. Remaining Plaintiffs contend that defendants Gooch and Casella conducted the inspection "all around the property" without their consent. See DE [150-1] at 30-31.

D.  Events Subsequent to the July 17, 2012 Inspection

On July 18, 2012, defendant Casella, the Superintendent of Village Department of Buildings, sent a letter to Simmons notifying her of maintenance violations and porch repair

---

[1] For ease of reference, page numbers referenced herein are numbers assigned to pages on electronically filed documents, and not to the underlying documents themselves except for page numbers referenced in cases. To be clear, even page numbers referenced for transcript citations are the numbers assigned to the page on the electronically filed documents.

4

needs on the property. On August 17, 2012, defendant Gooch sent a Notice of Violation to Simmons regarding the current violations on the Property. See DE [147-20]. That same day, the Village Court of Rockville Centre mailed an appearance ticket, signed by Gooch, to Simmons ordering her to appear at the Village Court on October 2, 2012 for violations including, overgrown trees and bushes, porch disrepair, and lack of proper protective coating (paint). See DE [147-21].

On September 10, 2012, Plaintiffs applied for a permit to perform work on the Property. On September 25, 2012, the permit was issued by the Village.

On October 22, 2012, the Village Court of Rockville Centre issued another appearance ticket to Simmons signed by Gooch directing her to appear before the Village Court for "failure to obey directive."

On February 5, 2013, Murray, the Rockville Centre Mayor, received a letter from Plaintiffs' neighbor indicating significant issues that needed to be addressed regarding the Property. The letter indicates that there were "four abandoned and two unregistered cars in the yard, many of the trees are overgrowing and infringing on my property and fences have been placed around the perimeter in an unsuccessful attempt to hide the junkyard appearance." DE [147-24]. The neighbor goes on to state that his "biggest concern is that the structural soundness of the house is in question." Id.

On April 30, 2013, defendant Bunting went to the Property to issue a summons pursuant to complaints. While at the property Bunting observed, among other things, that the deck was collapsing.

  E. May 1, 2013

5

When defendant Klugewicz, Chief Fire Safety Inspector for Rockville Centre, arrived at the Property on May 1, 2013, he noticed multiple and severe fire hazards, including windows covered by papers and clothing, and all viewpoints into the house showing that it was filled with such items. Affidavit of Peter Klugewicz "("Klugewicz Aff."), ¶ 3, DE [143-7]. Klugewicz also noticed a strong smell of gas. Id.  Because Klugewicz deemed the Property to be dangerous, he gave an order that if a fire were to occur, public responders were only to "surround and drown." Id. ¶ 4. He had this order disseminated to multiple firehouses. Id. The order advised the companies that should a fire occur, public responders were not to enter the house. Id. As a result of the imminent danger to public responders, the padlock was cut to allow entry onto the property. Id. ¶ 5.

Thorp, the Rockville Centre Fire Chief, was called to the Property by Casella. Affidavit of John Thorp ("Thorp Aff."), ¶ 4, DE [143-6]. He states that from the front of the house, using the mailman's view, he was able to see the deteriorating physical condition of the house, as well as the rotting porch. Id. ¶ 5. Thorp also witnessed a worn-out extension cord on the porch which he considered a fire hazard. Id. ¶ 6. These observations are what prompted his concern for the safety of potential public responders and why he cut the padlock to the property. Id. ¶¶ 7-8.

Also present on May 1, 2013, were defendants Bunting, a Rockville Centre Building Inspector, Gooch, and Casella. All Defendants agree that the exterior of the house was a cause for concern, including a concern for the safety of the public. All Defendants also agree that once the padlock was cut and entry into the backyard gained, additional items of concern were found. These items included an empty propane tank, gas cans, and a car battery. However, what no one can agree on and/or remember was who initiated the May 1, 2013 visit to the property, and why ultimately, the Property was deemed an imminent danger when no first responders were on site

6

so that the lock to the backyard could be cut. Defendants' affidavits remain either ambiguous or contradictory on these points[2] and as evidenced below, the provided deposition testimony is equally unhelpful on these facts.

> Q. Why did you go to the property 257 North Village Avenue on May 1, 2013?
>
> A. I recall I was called to the scene by one of the inspectors, maybe the fire department, but I was contacted to respond.
>
> Q. Why were you summoned to 257 North Village Avenue on May 1, 2013?
>
> A. There was a cause for concern with regard to various matters at the premises.
>
> Q. Who broke the lock?
>
> A. Not me.
>
> Q. Who made the decision to break the lock and go in the backyard?
>
> A. The person who broke the lock.
>
> Q. The person who broke the lock made the decision to go in the backyard and others followed?
>
> A. Yes.
>
> Q. Was this an imminent emergency?
>
>     Ms. Ritzert: Objection.
>
> A. Depending on who initiated the first entry and their reasons for doing so.

---

[2] For example, Thomas Bunting's affidavit states that he "personally appeared at the property located at 27 Middle Neck Road, Rockville Centre, New York." See Affidavit of Thomas Bunting ("Bunting Aff.") ¶ 4, DE [143-8]. While the erroneous property address may explain why there is no clarity in his, nor any of the Defendants affidavits, regarding who was on site at the Property when they arrived, why they were dispatched to the site, and most importantly, why the Property was deemed an imminent danger when no first responders were on site.

> Q. Do you know what their reasons for doing so were?
>
> Ms. Ritzert: Objection.
>
> A. I seem to recall that the chief wanted to break the lock. Who actually broke the lock, I'm not sure, but it was not me, and then I was invited to accompany him.
>
> Q. To your knowledge, did you find any emergency items needing to be addressed on May 1, 2013 that would cause a need to break into the yard without notice or consent?
>
> Ms. Ritzert: Objection.
>
> A. It was perilous.
>
> Q. Was there an emergency, an immediate emergency?
>
> A. I said it was perilous is my answer.

Casella Deposition Transcript ("Casella Tr.") DE [150-1], 53:16-19; 61:2-21; 64:20-65:4.

Remaining Plaintiffs contend that no imminent danger was present, and that Defendants simply broke onto Plaintiffs' property.

III. The Motion for Summary Judgment

Remaining Defendants seek summary judgment as to all of Plaintiffs' claims asserting that all of the claims are meritless. With respect to claims brought on Mr. Griffin's behalf, Defendants contend that he lacks the capacity to sue because he is deceased and has no duly appointed representative. Regarding the July 17, 2012 incident, Defendants maintain that there is no evidence in the record to support an unlawful search and seizure claim against Gooch and Casella. Finally, as for the May 1, 2013 incident, Defendants argue that they initially, without entering onto the property, observed items that presented imminent danger, and they acted reasonably due to the exigent circumstance in the identified fire hazard.

8

Remaining Plaintiffs contend that Simmons was duly appointed as administrator of her parents' estates and was properly substituted to appear on their behalf in this action by Order dated March 3, 2020. Remaining Plaintiffs further aver that the Remaining Defendants have not satisfied their heavy evidentiary burden in proving that there is no genuine issue of material fact in dispute as to the events during the July 17, 2012 and May 1, 2013 incidents.

Having summarized the facts and the parties' positions the Court turns to the merits of the motion.

## DISCUSSION

I.  Legal Principles: Standards on Summary Judgment

Summary judgment is proper 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" ING Bank N.V. v. M/V TEMARA, IMO No. 9333929, 892 F.3d 511, 518 (2d Cir. 2018) (quoting Fed. R. Civ. P. 56(a)). In ruling on a summary judgment motion, the district court must first "determine whether there is a genuine dispute as to a material fact, raising an issue for trial." McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 202 (2d Cir. 2007); see also Ricci v. DeStefano, 557 U.S. 557, 129 S. Ct. 2658, 2677, 174 L. Ed. 2d 490 (2009) ("On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party *only* if there is a 'genuine' dispute as to those facts." (emphasis added)). "A fact is material if it might affect the outcome of the suit under the governing law." Baldwin v. EMI Feist Catalog, Inc., 805 F.3d 18, 25 (2d Cir. 2015).

In reviewing the record to determine whether there is a genuine issue for trial, the court must "construe the evidence in the light most favorable to the non-moving party," Centro de la Comunidad Hispana de Locust Valley v. Town of Oyster Bay, 868 F.3d 104, 109 (2d Cir. 2017),

9

and "resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment." Davis-Garett v. Urban Outfitters, Inc., 921 F.3d 30, 45 (2d Cir. 2019). "A genuine issue of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Pollard v. New York Methodist Hosp., 861 F.3d 374, 378 (2d Cir. 2017). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Ricci, 557 U.S. at 586, 129 S. Ct. at 2677.

"The moving party bears the initial burden of showing that there is no genuine dispute as to a material fact." CILP Assocs., L.P. v. PriceWaterhouse Coopers LLP, 735 F.3d 114, 123 (2d Cir. 2013). "[W]hen the moving party has carried its burden[,] … its opponent must do more than simply show that there is some metaphysical doubt as to the material facts," Scott v. Harris, 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007), and must offer "some hard evidence showing that its version of the events is not wholly fanciful[.]" Miner v. Clinton County, N.Y., 541 F.3d 464, 471 (2d Cir. 2008). The nonmoving party can only defeat summary judgment "by adduc[ing] evidence on which the jury could reasonably find for that party." Lyons v. Lancer Ins. Co., 681 F.3d 50, 56 (2d Cir. 2012). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient to defeat a summary judgment motion[,]" Fabrikant v. French, 691 F.3d 193, 205 (2d Cir. 2012); and "[a] court cannot credit a plaintiffs merely speculative or conclusory assertions." DiStiso v. Cook, 691 F.3d 226, 230 (2d Cir. 2012); see also Flores v. United States, 885 F.3d 119, 122 (2d Cir. 2018) ("While we are required to resolve all ambiguities and draw all permissible factual inferences in favor of the non-moving party, . . . conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment"). Since "there is no issue for trial unless there is sufficient

evidence favoring the nonmoving party for a jury to return a verdict for that party[,] . . . [i]f the evidence is merely colorable, . . . or is not significantly probative, . . . summary judgment may be granted." Anderson, 477 U.S. at 249-50, 106 S. Ct. 2505.

In federal courts, summary judgment is warranted, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 322-23, 106 S. Ct. 2548; see also Chandok v. Klessig, 632 F.3d 803, 812 (2d Cir. 2011) ("Where the undisputed facts reveal that there is an absence of sufficient proof as to one essential element of a claim, any factual disputes with respect to other elements become immaterial and cannot defeat a motion for summary judgment.") "The moving party is 'entitled to a judgment as a matter of law 'because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." Celotex, 477 U.S. at 323, 106 S. Ct. 2548. Accordingly, when "the burden of persuasion at trial would be on the nonmoving party . . . the party moving for summary judgment may satisfy his burden of production under Rule 56 in either of two ways: (1) by submitting evidence that negates an essential element of the nonmoving party's claim, or (2) by demonstrating that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." Nick's Garage, Inc. v. Progressive Casualty Ins. Co., 875 F.3d 107, 114 (2d Cir. 2017).

"When a *pro se* litigant is involved, although the same standards for summary judgment apply, the *pro se* litigant 'should be given special latitude in responding to a summary judgment motion.'" Laster v. Mancini, No. 07–cv–8268, 2013 WL 5405468, at *2 (S.D.N.Y. Sept. 25, 2013) (quoting Gonzalez v. Long, 889 F. Supp. 639 (E.D.N.Y. 1995)). "Nevertheless, a *pro se* litigant cannot rely solely upon the pleadings[ ] or conclusory allegations or unsubstantiated speculation to defeat summary judgment." Cole v. Rogers, No. 14–cv–3216, 2017 WL 1157182, at *6 (E.D.N.Y. Mar. 6, 2017) (citation and internal quotation marks omitted), report and recommendation adopted, 2017 WL 1155002 (E.D.N.Y. Mar. 27, 2017).

With these standards in mind, the Court turns to discuss the legal principles to be applied and the merits of the motion.

II.     Proper Substitution

Remaining Defendants initially argue that because Charles Griffin is deceased, he lacks the capacity to sue. No one disputes this contention. What Defendants are poorly attempting to dispute is Caril Simmons' appointment as the administrator of Mr. Griffin's estate, and thus, her substitution as his representative in this action,

However, the time to oppose Simmons' substitution in this action on behalf of Mr. Griffin has long passed. Plaintiffs moved to have Simmons substituted on Mr. Griffin's behalf on December 12, 2019. DE [125]. A review of the docket reveals that Defendants failed to oppose the motion. On March 3, 2020, the Honorable Gary R. Brown, granted Plaintiffs' request and Simmons was substituted for Mr. Griffin. DE [133]. Defendants waited until filing the instant motion on December 22, 2020, over a year after Plaintiffs filed the motion for substitution and nine months after it was granted, to assert such an argument. Assuming arguendo this Court were to construe Defendants' request as a motion for reconsideration, it would still recommend that

12

the motion be denied as untimely as it was filed almost nine months past the fourteen-day deadline imposed by Local Civil Rule 6.3.

Accordingly, because Simmons was properly substituted on Mr. Griffin's behalf, it is respectfully recommended that the Remaining Defendants' motion to dismiss Mr. Griffin's claims be denied.

III.  Section 1983

Plaintiffs allege constitutional claims under 42 U.S.C. § 1983. "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." Sykes v. James, 13 F.3d 515, 519 (2d Cir. 1993). To state a claim under Section 1983, a plaintiff must allege (1) the deprivation of any rights, privileges, or immunities secured by the Constitution and its laws, (2) by a person acting under the color of state law. 42 U.S.C. § 1983.

    A.  Fourth Amendment

    1.  Legal Standard

The Fourth Amendment of the United States Constitution provides in full:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.

"As the text makes clear, 'the ultimate touchstone of the Fourth Amendment is 'reasonableness.'" Riley v. California, 573 U.S. 373, 134 S. Ct. 2473, 2482, 189 L. Ed.2d 430 (2014) (quoting Brigham City v. Stuart, 547 U.S. 398, 403, 126 S. Ct. 1943, 164 L. Ed. 2d 650 (2006)); see also Soldal v. Cook Cnty., Ill., 506 U.S. 56, 71, 113 S. Ct. 538, 121 L. Ed. 2d 450

(1992) (reaffirming that "reasonableness is still the ultimate standard under the Fourth Amendment" (internal citation and quotation marks omitted)). "Absent more precise guidance from the founding era, [the Supreme Court] generally determine[s] whether to exempt a given type of search from the warrant requirement 'by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests.'" Riley, 573 U.S. at 385 (quoting Wyoming v. Houghton, 526 U.S. 295, 300, 119 S. Ct. 1297, 143 L. Ed. 2d 408 (1999)).

The Fourth Amendment protects individuals in their homes "against unreasonable searches and seizures." U.S. Const. amend. IV. "A warrantless search is 'per se unreasonable ... subject only to a few specifically established and well-delineated exceptions.'" United States v. Elliott, 50 F.3d 180, 185 (2d Cir. 1995) (quoting Schneckloth v. Bustamonte, 412 U.S. 218, 219, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973)).

Under the Fourth Amendment, "one governing principle, justified by history and by current experience, has consistently been followed: except in certain carefully defined classes of cases, a search of private property without proper consent is 'unreasonable' unless it has been authorized by a valid search warrant." Camara v. Mun. Court of S.F., 387 U.S. 523, 528–29, 87 S. Ct. 1727, 18 L. Ed. 2d 930 (1965).

i.  Exigent Circumstances

A warrantless search is permissible if exigent circumstances require state officials' immediate entry to the property. The Supreme Court has stated that

> the police bear a heavy burden when attempting to demonstrate an urgent need that might justify warrantless searches or arrests. Indeed, the Court has recognized only a few such emergency conditions, see, e.g., United States v. Santana, 427 U.S. 38, 42–43, 96 S. Ct. 2406, 49 L. Ed. 2d 300 (1976) (hot pursuit of a fleeing felon); Warden v. Hayden, 387 U.S. 294, 298–99, 87 S. Ct. 1642, 18 L. Ed. 2d 782 (1967) (same); Schmerber v. California, 384 U.S. 757, 770–71, 86 S. Ct.

14

> 1826, 16 L. Ed. 2d 908 (1966) (destruction of evidence); Michigan v. Tyler, 436 U.S. 499, 509, 98 S. Ct. 1942, 56 L. Ed. 2d 486 (1978) (ongoing fire), and has actually applied only the "hot pursuit" doctrine to arrests in the home, see Santana, supra.

Welsh v. Wisconsin, 466 U.S. 740, 749–50, 104 S. Ct. 2091, 80 L. Ed. 2d 732 (1984). A search may be reasonable under the emergency aid doctrine when officers reasonably believe that it is necessary to protect the occupants of the residence from imminent injury. Brigham City, Utah v. Stuart, 547 U.S. 398, 403, 126 S. Ct. 1943, 164 L. Ed. 2d 650 (2006) ("[L]aw enforcement officers may enter a home without a warrant to render emergency assistance to an injured occupant or to protect an occupant from imminent injury." (citation omitted)).

> [Moreover,] the Supreme Court has made clear that the subjective intent of government agents is irrelevant to determining whether a particular search was reasonable under the Fourth Amendment.... Rather, "[a]n action is 'reasonable' under the Fourth Amendment, regardless of the individual officer's state of mind, 'as long as the circumstances, viewed objectively, justify [the] action.'"

United States v. Klump, 536 F.3d 113, 118–19 (2d Cir. 2008) (internal citations omitted).

    a.    July 17, 2012 Incident

With respect to the July 17, 2012 incident, the record is devoid of any evidence that Casella and Gooch engaged in an unlawful search on July 17, 2012. Both Casella and Gooch provided testimony that while they were at the Property on July 17, 2012, they never entered the backyard in 2012 and that they only observed what was viewable from the street. Remaining Plaintiffs have not presented any evidence or material facts to defeat these assertions. Remaining Plaintiffs appear to base their claim that the Defendants engaged in an unlawful search because Casella told Simmons that he walked around the Property with Gooch. However, walk around does not mean unlawfully enter, especially when no evidence to support such a contention has been presented.

15

Given the evidence before the Court, a reasonable jury could not find in favor of the Remaining Plaintiffs with regard to the July 17, 2012 incident. Therefore, it is respectfully recommended that the Remaining Plaintiff's Section 1983 claims stemming from the July 17, 2012 incident be dismissed.

b.  May 1, 2013 Incident

Remaining Defendants contend that exigent circumstances existed that justified their consentless entry onto the Property on May 1, 2013. They contend that the physical state of the house, including the rotting porch with the weathered extension cord, the visible debris and paper and overgrown grass and shrubs (all of which could be seen from a mailman's view) caused them concern and ultimately forced them to deem the Property an imminent danger to the general public and first responders.

Remaining Plaintiffs have presented factual evidence from which a reasonable jury could find that there were no exigent circumstances justifying entry on the Property. They argue that the six foot fence and curtilage surrounding the yard make it nearly impossible to see into the yard without first entering it. They also contend that the house had no gas service on May 1, 2013, so any possible gas odor could not have possibly come from the Property. Plaintiffs also argue, and Defendants do not deny, that Remaining Defendants knew that no one was home during the May 1, 2013 but elected not to at least try to contact them before proceeding with the entry onto the Property. This is an important distinction because Defendants cite to the concern for the safety of first responders to the Property as a primary reason for deeming the Property an imminent danger. Remaining Defendants knew no one was home at that time and also knew no actual first responders were called or being called at that very time. So, the imminent portion of the danger may be questionable. Thus, there are disputed issues of fact regarding whether exigent

16

circumstances that warranted the Remaining Defendants' warrantless entry on the Property on May 1, 2013 existed.

Accordingly, this Court respectfully recommends that the Remaining Defendants' motion for summary judgment with respect to the Section 1983 claims stemming from the May 1, 2013 incident be denied.

IV.     Trespass

To prevail on a claim for trespass under New York law, a plaintiff must establish "an intrusion upon the property of another without permission." Christian v. Town of Riga, 649 F. Supp. 2d 84, 93 (W.D.N.Y. 2009); see also Hill v. Raziano, 63 A.D.3d 682, 683, 880 N.Y.S.2d 173 (2d Dep't 2009) ("Entering upon the property of another without permission, even if innocently or by mistake, constitutes trespass."). Similarly, a plaintiff may establish a trespass by demonstrating "a refusal to leave after permission has been granted but thereafter withdrawn." Volunteer Fire Ass'n of Tappan, Inc. v. County of Rockland, 101 A.D.3d 853, 855, 956 N.Y.S.2d 102 (2d Dep't 2012). However, "law-enforcement officials have a privilege to enter private property to perform their legal duties." Reynolds v. United States, 927 F. Supp. 91, 96 (W.D.N.Y. 1996); see also Nicholas, 2012 WL 3261409, at *22 ("If a law officer enters onto Plaintiff's property to carry out his official duties, his entry is justified and a trespass claim will not succeed."); Pari v. City of Binghamton, 57 A.D.2d 674, 675, 393 N.Y.S.2d 815 (3d Dep't 1997) ("[I]t is ... well settled that the police have a general obligation to assist those whom they reasonably believe to be in distress and that exigent circumstances can result in a situation wherein a warrantless intrusion is justified."); 75 Am. Jur. 2d Trespass § 103 ("A law enforcement officer is privileged to commit a trespass if he is exercising his lawful authority.").

As discussed above, a reasonable jury could find that exigent circumstances did not exist to justify entry onto the Property on May 1, 2013. Absent exigent circumstances or Plaintiffs' permission, which Defendants do not allege, the entry would have constituted trespass. See People v. Abruzzi, 385 N.Y.S.2d 94, 97 (App. Div. 1976) ("But having failed to obtain a warrant where no exigent circumstances were present, the investigator's position in the defendant's backyard was unlawful ..."), aff'd, 364 N.E.2d 1342 (N.Y. 1977); People v. Vernon B., 35 Misc. 3d 1241(A), at *1 (N.Y. Crim. Ct. 2012) ("Where an officer's warrantless presence on private property is not based on consent or exigent circumstances, his presence may be unlawful….").

Because a reasonable jury could find in favor of Plaintiffs, it is respectfully recommended that the Remaining Defendants' motion for summary judgment with respect to the trespass claim be denied.

## CONCLUSION

For the foregoing reasons, this Court respectfully recommends that the Remaining Defendants' motion for summary judgment, appearing as Docket Entry No. 143 herein, be granted in part and denied in part. Specifically, this Court recommends that the motion be granted with respect to all claims from the July 12, 2012 incident and denied with respect to all claims from the May 1, 2013 incident. The Court further recommends that the motion to dismiss all claims brought on behalf of Mr. Griffin be denied.

## OBJECTIONS

A copy of this Report and Recommendation is being provided to Defendants' counsel via ECF. Defendants' counsel is directed to serve a copy of this Report and Recommendation on Plaintiffs, and to file proof of service on the docket sheet, by September 2, 2021. Any written objections to this Report and Recommendation must be filed with the Clerk of the Court within

fourteen (14) days of filing of this report.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72(b). Any requests for an extension of time for filing objections must be directed to the District Judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections within fourteen (14) days will preclude further review of this report and recommendation either by the District Court or Court of Appeals. Thomas v. Arn, 474 U.S. 140, 145 (1985) ("[A] party shall file objections with the district court or else waive right to appeal."); Caidor v. Onondaga Cnty., 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision").

Dated: Central Islip, New York
       August 31, 2021

                                                /s/ Anne Y. Shields
                                              Anne Y. Shields
                                              United States Magistrate Judge