UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

CARIL SIMMONS, *as administrator of the*
*estates of Charles Griffin and Geraldine*
*Griffin, deceased*, and CRAIG GRIFFIN

                Plaintiffs,

      v.

DANIEL CASELLA, Building
Superintendent of the Incorporated Village of
Rockville Centre; JOHN GOOCH, Building
Inspector for the Incorporated Village of
Rockville Centre; THOMAS BUNTING,
Building Inspector for the Incorporated
Village of Rockville Centre; PETER
KLUGEWICZ, Chief Fire Safety Inspector
for the Incorporated Village of Rockville
Centre; JOHN THORP, Fire Chief for the
Incorporated Village of Rockville Centre, *in*
*their official and individual capacities*,

                Defendants.

**MEMORANDUM & ORDER**
14-CV-4491 (HG) (AYS)

**HECTOR GONZALEZ**, United States District Judge:

       In 2014, Charles Griffin, Geraldine Griffin, Craig Griffin, Lance Griffin, and Caril

Simmons filed this action against the Incorporated Village of Rockville Centre and individuals

Francis X. Murray, Daniel Casella, John Gooch, Thomas Bunting, John Thorp, and Peter

Klugewicz (in their official and individual capacities) alleging claims under 42 U.S.C. § 1983

and New York State law.  Since the case's inception almost ten years ago, the litigants and

claims have been trimmed.  ECF No. 54 (Order on Motion to Dismiss); ECF No. 63 (Order on

Motion for Reconsideration); ECF No. 90 (Discovery Scheduling Order re Plaintiffs Proceeding

*pro se*); ECF No. 133 (Order Adopting R&R on Motion to Substitute Named Party); ECF No.

152 (R&R on Motion for Summary Judgment); September 28, 2021, Text Order (Adopting R&R

on Motion for Summary Judgment).  The remaining parties are *pro se* Plaintiffs Caril Simmons,

as administrator of the estates of Charles Griffin and Geraldine Griffin, and Craig Griffin

("Plaintiffs"), and Defendants Daniel Casella, John Gooch, Thomas Bunting, Peter Klugewicz,

and John Thorp ("Defendants").  There are two remaining claims:  (i) a Section 1983 claim for

an alleged violation of Plaintiffs' Fourth Amendment rights, and (ii) a state law trespass claim.

ECF No. 152; September 28, 2021, Text Order.  Both claims are related to Defendants'

warrantless entrance onto the grounds of 257 North Village Avenue, Rockville Centre, New

York ("the Property") on May 1, 2013.  ECF No. 152; September 28, 2021, Text Order.

Prior to this case being reassigned to me, the parties engaged in summary judgment

motion practice.  ECF Nos. 143, 147 (Defendants' Motion for Summary Judgment); ECF No.

150 (Plaintiffs' Opposition to Motion for Summary Judgment).  Those papers mention only

briefly the applicability of the doctrine of qualified immunity, and the defense was not addressed

in the Court's summary judgment decision.  ECF No. 143-2 at 24–27[1]; ECF No. 152; September

28, 2021, Text Order.  Because "a ruling on [qualified immunity] should be made early in the

proceedings so that the costs and expenses of trial are avoided where the defense is dispositive,"

*Saucier v. Katz*, 533 U.S. 194, 200 (2001), *overruled on other grounds*, *Pearson v. Callahan*,

555 U.S. 223 (2009),[2] I requested that the remaining parties further brief the issue of qualified

immunity as it pertains to Plaintiffs' Section 1983 claim, and brief the issue of whether the Court

should continue to exercise supplemental jurisdiction over the remaining state law claim.  ECF

No. 173 (Order on Supplemental Briefing).[3]  The issue is now fully briefed.  ECF No. 175

---

[1]      Citations to ECF cite to the pages assigned by the Electronic Case Files System (ECF).

[2]      Unless noted, case law quotations in this Order accept all alterations and omit all internal question marks, citations, and footnotes.

[3]      "A district court . . . possesses the inherent authority to *sua sponte* reconsider its own interlocutory orders before they become final."  *Chartis Seguros Mexico, S.A. de C.V. v. HLI Rail Rigging, LLC*, No. 11-cv-3238, 2015 WL 545565, at *2 (S.D.N.Y. Feb. 9, 2015).

(Defendants' Supplemental Motion on Qualified Immunity); ECF No. 176 (Plaintiffs'

Supplemental Motion on Qualified Immunity); ECF No. 177 (Defendants' Reply).  For the

reasons stated herein, the Court finds Defendants are entitled to qualified immunity as to the

Section 1983 claim, and the Court will not exercise supplemental jurisdiction over Plaintiffs'

remaining state law claim.

## FACTUAL BACKGROUND

The Court assumes familiarity with the facts of the case and therefore provides a

summary of the facts only as they pertain to the supplemental briefing on qualified immunity.

The following facts are drawn largely from the parties' briefing on qualified immunity, the

parties' statements of material facts submitted pursuant to Rule 56.1,[4] Plaintiffs' Second

Amended Complaint, and the admissible evidence submitted by the parties.  Unless otherwise

noted, the facts contained herein are undisputed.

### A.    Events prior to May 1, 2013

Plaintiffs' remaining claims relate to an incident that occurred on the Property on May 1,

2013.  Prior to that date, inspections had been undertaken at the Property and Notices of

Violation had been issued regarding various maintenance and structural issues.  In February

---

"[B]ecause the denial of a motion for summary judgment is an interlocutory order, the trial court is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law." *See Grimaldi v. Promuto*, No. 13-cv-1692, 2014 WL 12657039, at *1 (S.D.N.Y. Oct. 17, 2014). "Whether such revision is appropriate in any given case is within the sound discretion of the trial judge." *Acha v. Beame*, 570 F.2d 57, 63 (2d Cir. 1978); *accord Esposito v. Suffolk Cnty. Cmty. Coll.*, 517 F. Supp. 3d 126, 134 (E.D.N.Y. 2021).

[4]    The parties were permitted to rely on their previously submitted 56.1 statements in their supplemental briefing.  They were not permitted to supplement them.  ECF No. 173 at 2.

2012, Defendant Gooch, a building inspector for Rockville Centre,[5] issued a Notice of Violation

for the Property, citing violations of "Unsheltered storage of un-useable automobiles" and

"Garbage and Debris."  ECF No. 147-18 (February 23, 2012, Notice of Violation).  In July 2012,

Defendant Casella, the Building Department Superintendent for Rockville Centre,[6] and

Defendant Gooch observed the Property from the "same route that a mailman would take."  ECF

No. 143-5 at 3; *see also* ECF No. 147-14 at 3 (Casella Dep. Tr.).  Following that visit to the

Property, in July and August of 2012, Defendant Gooch and Defendant Casella sent separate

letters to Plaintiff Simmons notifying her of landscaping maintenance deficiencies and necessary

structural repairs to the Property.  ECF No. 147-19 (July 18, 2012, Letter to Simmons); ECF No.

147-20 (August 17, 2012, Letter to Simmons).  The July 2012 letter indicated that the Property

was considered "dangerous and is detrimental to the health, safety, [and] general welfare . . . of

the community and . . . [a] potential fire hazard," among other things.  ECF No. 147-19.  The

August 2012 letter informed Plaintiff Simmons that the purpose of the notice was "to keep the

[efforts to clean up the Property] progressing in a more timely manner," and therefore the repairs

would need to be performed with oversight from the Village Court of Rockville Centre.  ECF

No. 147-20.  Although Plaintiff Simmons received a permit to perform work on the Property in

September 2012, *see* ECF No. 147-22 (September 2012 Permit Form), the Village Court issued a

summons the following month for Plaintiff Simmons to appear in court for "failure to obey [a]

---

[5]     Defendant Gooch had worked for the Village of Rockville Centre since June 2009 and
was tasked with investigating buildings, conducting safety inspections, reporting code violations,
and issuing summonses.   ECF No. 143-5 at 1 (Gooch Aff.).

[6]     Defendant Casella worked for the Village of Rockville Centre from 2007 to 2017.  Part of
his duties as Building Superintendent included "making sure that safety provisions and permit
inspections are followed through on a timely basis."  ECF No. 143-4 at 1 (Casella Aff.).

directive." ECF No. 147-23 (October 22, 2012, Summons). The summons noted that "[p]orch

repair must begin" as well as "land scaping [*sic*] efforts." *Id.*

In February 2013, the Rockville Centre Mayor received a letter from a neighbor of the

Property stating that there were "still some significant issues that need[ed] to be addressed" on

the Property, including "4 abandoned and unregistered cars in the yard . . . trees [that] are

overgrown and infringing on [the neighbor's] property, and fences [that] have been placed

around the perimeter in an unsuccessful attempt to hide the junkyard appearance." ECF No.

147-24 (February 5, 2013, Letter to Mayor Murray). The neighbor's "biggest concern" was "the

structural soundness of the house . . even after the few attempts at repairing the front porch." *Id.*

On April 30, 2013, Defendant Bunting, a building inspector for Rockville Centre,[7] visited the

Property following complaints and noted that the front porch was collapsing. ECF No. 147-11 at

2 (Bunting Dep. Tr.); ECF No. 150-1 at 226 (Bunting Dep. Tr.).

> B.    *May 1, 2013*

On May 1, 2013, Defendant Klugewicz, Chief Fire Safety Inspector for Rockville Centre,

Defendant Thorp, Assistant Fire Chief for Rockville Centre, and Defendants Casella, Gooch and

Bunting visited the Property. ECF No. 143-4 at 2; ECF No. 143-5 at 3; ECF No. 143-6 at 2

(Thorp Aff.); ECF No. 143-7 at 1 (Klugewicz Aff.); ECF No. 143-8 at 2. Upon arriving at the

Property, Defendant Klugewicz observed it to be in a "threatening condition." ECF No. 143-7 at

1. He described the windows as being "covered with clothing and papers," which, in his opinion,

"increased [the] risk it posed to public safety and the public responders should a fire occur." *Id.*

Defendant Klugewicz further observed "vehicles and automobile parts . . . as well as debris and

---

[7]    Defendant Bunting started in the Building Department in 1988. ECF No. 150-1 at 214;
*see also* ECF No. 143-8 at 1 (Bunting Aff.). He testified at his deposition that building
inspectors complete mandatory training on inspector/code enforcement on an annual basis. ECF
No. 150-1 at 214.

overgrown shrubs" on the Property.  *Id.*  He also noticed the presence of an odor he described as "a strong smell of gas" emanating from the Property.  *Id.*  Defendant Bunting likewise described the presence of a "strong burning smell" at the Property.  ECF No. 147-11 at 4.  In light of what he observed and smelled, Defendant Klugewicz deemed the Property to be a safety hazard for first responders and immediately issued an order—for dissemination to multiple firehouses in the vicinity of the Property—that public responders were only to "surround and drown" and not enter the house if a fire occurred at the Property.  ECF No. 143-7 at 2.  Defendants Casella and Thorp described observing similar conditions at the Property and Defendant Thorp additionally noticed a worn-out extension cord on the porch.  ECF No. 143-4 at 2; ECF No. 143-6 at 2; *see also* ECF No. 143-8 at 2.  These conditions, and the concern for the immediate danger that they posed to occupants of the Property, the public, and first responders, prompted Defendant Thorp to cut the padlock on a gate to allow entry into the backyard of the Property.  ECF No. 143-6 at 2; ECF No 147-11 at 3–4.  Defendants Klugewicz, Casella, Thorp, and Bunting thereafter went into the backyard, where they observed more automobile parts, debris, a propane tank, and a decaying car battery that turned out to be the source of the perceived strong burning or gas-like odor.  ECF No. 143-4 at 2; ECF No. 143-6 at 2; ECF No. 143-7 at 2; ECF No. 143-8 at 2; ECF No 147-11 at 4.  Defendants Casella and Thorp also turned off the electricity at the Property to lessen the risk of fire.  ECF No. 143-4 at 2.

Plaintiffs, who were not present at the Property on May 1, 2013, when Defendants made their observations, refute Defendants' descriptions of the Property, contending they are "fictional observations of Plaintiffs' house absent physical evidence," that there was fencing surrounding the yard that made it impossible to see into the yard without first entering it, and that there was

no gas on the Property that would produce a gas smell.  ECF No. 176 at 5; *see also* ECF No. 150 at 72 (Simmons Aff.).

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In other words, a court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  The moving party has the burden of demonstrating that there is no genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  "Where the moving party demonstrates the absence of a genuine issue of material fact, the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact."  *Brown v. Eli Lily & Co.*, 654 F.3d 347, 358 (2d Cir. 2011).

In deciding a summary judgment motion, any ambiguities and inferences drawn from the facts must be viewed in the light most favorable to the nonmoving party.  *LaFond v. Gen. Physics Servs. Corp.*, 50 F.3d 165, 171 (2d Cir. 1995).  In reviewing the evidence and inferences that may reasonably be drawn, the court "may not make credibility determinations or weigh the evidence . . . .  Credibility determinations . . .  [are a] jury function[ ], not [that] of a judge."  *Reeves v. Sanderson Plumbing Prods., Inc*., 530 U.S. 133, 150 (2000).  Nevertheless, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."  *Anderson*, 477 U.S. at 252.

"[T]he doctrine of qualified immunity . . . protects government officials from civil damages liability insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Sanchez v. Nassau Cnty*., 662 F. Supp. 3d 369, 404 (E.D.N.Y. 2023); *see also Faghri v. Univ. of Connecticut.*, 621 F.3d 92, 96 (2d Cir. 2010) ("Under qualified immunity, government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.").  "A right is clearly established when the contours of the right are sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Reyes v. Fischer*, 934 F.3d 97, 103 (2d Cir. 2019).

In determining whether qualified immunity applies, courts in this Circuit look at: "(1) whether plaintiff has shown facts making out [a] violation of a constitutional right; (2) if so, whether that right was clearly established; and (3) even if the right was clearly established, whether it was objectively reasonable for the officer to believe the conduct at issue was lawful." *Gonzalez v. City of Schenectady*, 728 F.3d 149, 154 (2d Cir. 2013).  In analyzing a claim of qualified immunity, "[t]he ultimate question" is "whether it was objectively reasonable for an officer to believe that his conduct did not violate a clearly established right." *Jackson v. Tellado*, 236 F. Supp. 3d 636, 652 (E.D.N.Y. 2017).  Courts have regularly found that building inspectors and code enforcement officers are entitled to qualified immunity.  *See Ferreira v. Town of E. Hampton*, 56 F. Supp. 3d 211, 238–40 (E.D.N.Y. 2014) (granting summary judgment for building inspector and code enforcement officer because they were entitled to qualified immunity); *see also Zahra v. Town of Southold*, 48 F.3d 674, 688 (2d Cir. 1995) (holding that

building inspectors were entitled to qualified immunity because the court found their actions at the time to be objectively reasonable).

## DISCUSSION

### I.      Plaintiffs' Section 1983 Claim

Plaintiffs' Section 1983 claim is based on an alleged violation of the Fourth Amendment. ECF No. 176 at 2–3.  "It is fundamental . . . that [Section] 1983 creates no independent, substantive constitutional rights but rather is a vehicle for enforcing such rights." *Rosa R. v. Connelly*, 889 F.2d 435, 440 (2d Cir. 1989).  Plaintiffs may bring private suits under Section 1983 "against persons acting under color of state law to recover money damages for deprivations of their federal or constitutional rights." *Sagy v. City of New York*, No. 18-cv-1975, 2022 WL 6777602, at *2 (E.D.N.Y. Oct. 11, 2022).  "To establish a Section 1983 claim, a plaintiff must show that a person acting under color of state law violated a right secured by the Constitution and laws of the United States." *Id*.  Here, Plaintiffs allege that their Fourth Amendment rights were violated when Defendants entered the Property without consent and without a warrant. ECF No. 176 at 2–4.

Defendants do not dispute that they entered onto the Property without permission and without a warrant.  In fact, all Defendants agree that no resident capable of granting such permission was on the Property on May 1, 2013.  *See* ECF No. 143-4 at 2; ECF No. 143-5 at 4; ECF No. 143-6 at 2; ECF No. 143-7 at 2; ECF No. 143-8 at 2; *see also* ECF No. 147-8 at 2 (Simmons Dep. Tr.).  Defendants instead contend that they are entitled to qualified immunity because it was objectively reasonable for them to believe they were not violating Plaintiffs' Fourth Amendment rights by entering the Property based on the belief that an imminent danger existed.  ECF No. 175 at 5–6.  Specifically, Defendants argue that the hazardous conditions they

9

observed when they arrived at the Property, combined with the strong burning odor that was emanating from the Property, caused them to believe the Property posed an immediate danger to the occupants, the public, and first responders.  *Id.* at 6–8.  Plaintiffs counter that the conditions described by Defendants did not exist and Defendants could not have smelled gas because there was no gas line on the Property.  ECF No. 176 at 5.

It is well-established that exigent circumstances provide an exception to the Fourth Amendment's warrant requirement.  *Coolidge v. New Hampshire*, 403 U.S. 443, 474–75 (1971).  In determining whether exigent circumstances exist, the "core question is whether the facts, as they appeared at the moment of entry, would lead a reasonable, experienced officer to believe that there was an urgent need to render aid or take action."  *United States v. Klump*, 536 F.3d 113, 118 (2d Cir. 2008).  In *Klump*, the Second Circuit found that Drug Enforcement Administration ("DEA") agents and firefighters had an objectively reasonable basis to believe there was an exigent circumstance on the property at issue—there, a fire—after they described smelling a burning odor.  *Id.* at 116, 118.  It was of no consequence that neither smoke nor fire was actually found on the property because "[t]he objective standard for assessing reasonableness focuses on what the facts, as they appeared at the *moment of entry*, would lead a reasonable, experienced officer to believe."  *Id.* (emphasis in original).  The individual officer's subjective state of mind was also not relevant as to whether the actions were reasonable under the Fourth Amendment "as long as the circumstances, viewed *objectively*, justif[ied] the action."  *Id.* (emphasis in original).

Although qualified immunity was not examined in *Klump*, the Court finds that the actions of the firefighters and DEA agents in that case are analogous to those of Defendants in this case in that it was reasonable for Defendants to believe exigent circumstances existed necessitating

their warrantless entrance onto the Property.  Upon arrival on May 1, 2013, Defendants

described the conditions of the Property to be "hazardous," "threatening," "deteriorating," and

"unsafe."  ECF No. 143-4 at 2; ECF No. 143-6 at 2; ECF No. 143-7 at 1.  Of particular concern

was the "strong smell of gas," also described as "a strong burning smell."  *See* ECF No. 143-7 at

1; ECF No. 147-11 at 4.  Additionally, the landscaping was "completely overgrown," "[t]he

windows could not be seen as they were blocked with extreme dirt and packing with clothes

from inside the house," the "porch was rotting away with large holes on the floor," and there

were vehicles parked on the lawn.  ECF No. 143-8 at 2; *see also* ECF No. 143-4 at 2; ECF No.

143-5 at 3; ECF No. 143-6 at 2; ECF No. 143-7 at 1.

  "[A]n officer is shielded from liability for a warrantless entry if it was objectively

reasonable to believe exigent circumstances justified the entry or reasonable officers could

disagree as to whether exigent circumstances were present."  *Tiramani v. Johnson*, 307 F. Supp.

3d 31, 38 (D. Conn. 2018).  In *Griffin v. Hannaford*, the Second Circuit found that "officers of

reasonable competence could disagree" over whether police officer defendants' entry into and

search of plaintiff's hotel room was justified by exigent circumstances.  482 F. App'x 607, 609

(2d Cir. 2012).  There, a hotel staff member informed the defendants that plaintiff had told the

hotel staff that there was "dangerous stuff" inside plaintiff's hotel room.  *Griffin v. Carl*, No. 7-

cv-1331, 2010 WL 3925134, at *2 (D. Conn. Sept. 27, 2010), *aff'd sub nom. Griffin v.*

*Hannaford*, 482 F. App'x 607 (2d Cir. 2012).  Even though "hotel staff had not observed

anything obviously dangerous in [the staff's] search of the room" and "no danger had become

apparent since the hotel had been informed of the 'dangerous stuff' the previous evening," the

Second Circuit nevertheless found defendants were entitled to qualified immunity because "a

reasonable officer could, under the circumstances, believe that a warrantless entry and search to

independently ensure the safety of the hotel staff and guests was justified by exigent circumstances." *Hannaford*, 482 F. App'x at 609.

Here, the Court similarly finds that reasonable firefighters and building inspectors could believe, based on the condition of the Property on May 1, 2013, that a warrantless entry and search of the grounds was necessary to protect occupants of the house, the public, and first responders if a fire occurred. *Cf. Simpson v. Rivera*, No. 20-cv-02478, 2023 WL 2585478, at *9 (N.D. Ohio Mar. 21, 2023), *aff'd*, No. 23-3300, 2024 WL 1739774 (6th Cir. Apr. 23, 2024) (finding exigent circumstances exception applied where officers reasonably believed their immediate entry onto the property was necessary to protect the occupants, neighbors, and the fire department). It is undisputed that it was not the first time some of these Defendants had seen the Property, as they had received complaints about it, previously inspected it, and previously issued citations regarding the need for the structural repair of the Property. ECF No. 143-4 at 2; ECF No. 143-5 at 3; ECF No. 143-8 at 2. Plaintiffs' neighbor had informed the town that his "biggest concern" was the "structural soundness of the house." ECF No. 147-24. Defendant Bunting, who was on the Property a day earlier, noted that the front porch was collapsing. ECF No. 147-11 at 2; ECF No. 150-1 at 226. This knowledge, coupled with the conditions observed or experienced by Defendants on May 1, 2013—especially the presence of a strong burning odor— presented an urgent situation that could be reasonably perceived as one requiring the immediate action on the part of Defendants to ensure the safety of the Property's occupants, the public, and first responders. The Court therefore finds Defendants' entrance onto the Property without permission or a warrant was done in the midst of exigent circumstances and thus Defendants are entitled to qualified immunity. *See Mangino v. Inc. Vill. of Patchogue*, 739 F. Supp. 2d 205, 266 (E.D.N.Y. 2010) ("[I]f Poulos had an objectively reasonable belief that . . . a warrantless search

without consent was justified based on his belief that there were exigent circumstances requiring his immediate attention, . . . he is entitled to qualified immunity."), *on reconsideration in part*, 814 F. Supp. 2d 242 (E.D.N.Y. 2011).

The Court recognizes that Judge Shields previously recommended that this portion of Defendants' summary judgment motion be denied because Plaintiffs had presented "factual evidence from which a reasonable jury could find that there were no exigent circumstances." ECF No. 152 at 16.  Judge Shields found Plaintiffs' allegations that there was a six-foot fence surrounding the yard and no gas service on the Property to present genuine issues of material fact precluding summary judgment.  *Id.* at 16–17.  The Court respectfully disagrees as applied here in the qualified immunity context.  A dispute is only "genuine" "where the evidence is such that a reasonable jury could decide in the non-movant's favor."  *See Beyer v. Cnty. of Nassau*, 524 F.3d 160, 163 (2d Cir. 2008); *Anderson*, 477 U.S. at 252 ("The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant].").  "It is well-established that naked efforts to stir up doubt without any basis in the evidentiary record are insufficient." *New Falls Corp. v. Soni*, No. 16-cv-6805, 2024 WL 1241982, at *6 (E.D.N.Y. Mar. 22, 2024). Plaintiffs admit that neither they, nor any other occupant of the Property, was present when Defendants arrived on May 1, 2013.  ECF No. 147-8 at 2; ECF No. 147-9 at 1 (Craig Griffin Dep. Tr.).  They have therefore failed to come forward with any admissible evidence of what the conditions were like on the Property on May 1, 2013, including whether there was a strong burning odor emanating from the Property.  *See Carl*, 2010 WL 3925134, at *3 ("[Plaintiff] has not introduced any evidence to calls [*sic*] into doubt Mr. Riddell's account of what happened on the day in question.").  Their assertions that the conditions of the Property were not as

Defendants describe can therefore not be said to be more than a "scintilla" of evidence because they are unsupported by any record evidence.  *Anderson*, 477 U.S. at 252; *see also Matushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (party resisting summary judgment "must do more than simply show that there is some metaphysical doubt as to material facts"); *Amusement Indus., Inc. v. Stern*, 721 F. App'x 9, 13 (2d Cir. 2018) ("Because [the non-moving party] adduces no evidence to support [his] assertion, it cannot raise a question of fact to defeat summary judgment."); *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005) ("At the summary judgment stage, a nonmoving party must offer some hard evidence showing that its version of events is not wholly fanciful.").

The Court's conclusion would be the same even if Plaintiffs had come forward with evidence showing that Defendants could not see the backyard of the Property due to the height of the fence.  Defendants indicated that they observed and experienced dangerous conditions immediately upon arrival to the Property, before entering the backyard.  *See, e.g.*, ECF No. 143-6 at 2 ("The porch, which could be seen from the mailman's path of the [P]roperty, was clearly in an unsafe condition, as the floorboards of the porch were rotting away."); ECF No. 143-7 at 1 ("When I arrived at the [P]roperty on May 1, 2013, I immediately noticed the threatening condition of the house . . . . I also noticed a strong smell of gas.").  Plaintiffs have put forth no evidence disputing that these conditions could not be seen or experienced upon arrival at the Property.  And, obviously, one need not enter the backyard to smell a strong burning odor.  *See Klump*, 536 F.3d at 116 (agents smelled smoke from outside of the warehouse).  The Court therefore finds that these conditions "as they appeared at the moment of entry, would lead a reasonable, experienced [firefighter or building inspector] to believe that there was an urgent need to . . . take action."  *Id.* at 118.

Even if the odor was the only condition experienced by Defendants, the Court would still find that it was objectively reasonable for Defendants to believe that exigent circumstances existed. *See Klump*, 536 F.3d at 118 (no clear error in district court's determination that firefighters and agents reasonably believed it was necessary to enter a warehouse after smelling a burning odor); *Simpson*, 2023 WL 2585478, at *9 (finding warrantless entry into occupant's home lawful under exigent circumstances exception in part because the officers noticed a smell of natural gas). Plaintiffs' assertion that there could not be a gas smell on the Property because there was no gas on the Property misses the point. The relevant issue is not whether the source of the odor was actually gas, but rather whether there was, in fact, a burning odor indicating a danger which emanated from the Property. As to that issue, Plaintiffs do not refute that there was a strong burning odor; they only refute that the source of any odor could not have been gas. Although the Court notes that Defendants did, in fact, find a deteriorating car battery, the Court is not permitted to assess whether Defendants' belief that there was a dangerous odor is supported in "hindsight" in determining whether exigent circumstances existed. *Klump*, 536 F.3d at 118. Nor were Defendants obligated to "wait until they saw actual smoke or flames" to reasonably believe the conditions on the Property posed a danger. *Id.* Rather, the Court's inquiry is focused on whether the undisputed facts demonstrate Defendants reasonably believed the entry onto the Property was necessary to protect the occupants, the public, and first responders. *See id.* (finding firefighters and DEA agents had an objectively reasonable basis for believing there was a fire necessitating a warrantless entry in part because they smelled smoke, and finding it irrelevant that no fire or smoke was actually found in hindsight).

Finally, Judge Shields found Plaintiffs' argument that Defendants knew no one was home to be persuasive in calling into question whether there was imminent danger on the Property

(because no one was home and no first responders were being called at that time).  ECF No. 152 at 16.  I disagree.  Defendants did not need to wait until a perceived danger actually materialized.  Here, Defendants referenced potential danger, not just to first responders and the occupants, but also to the public at large (*i.e.*, nearby neighbors), which alone would permit a finding of exigent circumstances in this context.  ECF No. 143-7 at 1; *see Hannaford*, 482 F. App'x at 609 (finding defendants were entitled to qualified immunity based on exigent circumstances where officers believed there was a danger to the hotel and its guests).

"[G]iven that there was no basis to know whether or how quickly the danger would dissipate," the Court finds that officials of reasonable competence could find Defendants' entry onto the Property justified by exigent circumstances and therefore objectively reasonable.  *Hannaford*, 482 F. App'x at 609.  Accordingly, the Court finds that Defendants are entitled to qualified immunity on Plaintiff's Section 1983 claim.

## II.    Plaintiffs' Trespass Claim

Despite the Court directing the parties to brief the issue on whether the Court should exercise supplemental jurisdiction over Plaintiffs' remaining state law trespass claim, the parties have not done so.  ECF No. 173 at 1.  Nevertheless, "[w]hile a federal district court may exercise supplemental jurisdiction over a plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a), supplemental jurisdiction is a doctrine of discretion, not of plaintiff's right."  *Marom v. Town of Hempstead*, No. 14-cv-3005, 2017 WL 5495808, at *7 (E.D.N.Y. Mar. 22, 2017), *aff'd*, 710 F. App'x 38 (2d Cir. 2018).  "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the [supplemental] jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims."  *Carnegie-Mellon Univ. v. Cohill*, 484

U.S. 343, 350 n.7 (1988).  The Court therefore declines to exercise supplemental jurisdiction over this single claim as all of the claims over which the Court had original jurisdiction have now been dismissed.  *See, e.g.*, *Harley v. Guida*, No. 19-cv-6152, 2022 WL 4539510, at *5 (E.D.N.Y. Sept. 28, 2022) (declining to exercise supplemental jurisdiction over plaintiff's state law claims after federal claim was dismissed).

## **CONCLUSION**

For the reasons set forth above, the Court grants summary judgment in favor of Defendants on the remaining Section 1983 claim because they are entitled to qualified immunity. The Court also declines to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims.  Accordingly, this case is dismissed.  The Clerk of Court is respectfully directed to enter judgment, close the case, and mail a copy of this order and the eventual judgment to *pro se* Plaintiffs.


SO ORDERED.

*/s/ Hector Gonzalez*
  HECTOR GONZALEZ
  United States District Judge

Dated: Brooklyn, New York
       June 27, 2024